IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-

MICKEY DALE SNOW

    Plaintiff,

v.

SAMUEL S. PAGE, in his official capacity
as Sheriff of Rockingham County, and in
his individual capacity, and
BILLY KING, in his individual
and official capacity, and
LIBERTY MUTUAL INSURANCE CO.,
as Surety

    Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

1:18CV996

Plaintiff files this Complaint pursuant to Rule 8 of the Federal Rules of Civil Procedure. Complaining of the Defendants, and seeking a jury trial, Plaintiff alleges the following:

### Parties

1. Plaintiff, Mickey Dale Snow, is a resident and citizen of Eden, Rockingham County, North Carolina and was wrongfully and unconstitutionally injured by the negligence and negligent supervison of Defendants Samuel S. Page ("Page") and Billy King at the Sheriff's Office Detention Center in Rockingham County in the early hours of December 11, 2015 or December 15, 2015.

2. Defendant Samuel S. Page ("Page") is the duly elected Sheriff and resident of Rockingham County, acting under the color of state law. Defendant Page was and is under a statutory duty to operate all law enforcement activities in Rockingham County, except for in

1

those municipalities with police departments, including the training and supervision of all persons deputized to carry out those activities on his behalf. Plaintiff is bringing this action against Defendant Page in his official capacity under N.C.G.S. § 58-76-5 and G.S. § 153A-435. He is also sued in his individual capacity under state law for actions that exceeded his lawful authority, that were malicious, corrupt, and intentional, thereby piercing any public officer immunity that he might claim. He is also sued individually under 42 U.S.C. § 1983 for actions taken under color of state law that violated Plaintiff's Fourteenth Amendment rights.

3. Defendant Billy King ("King") is a resident of Rockingham County, North Carolina and all times pertinent to this Complaint was an employee and Captain of the Rockingham County Sheriff's Department ("RCSD") empowered by Page with direct supervision and authority of the Rockingham Detention Center. All actions complained of were taken within the course of his employment with the RCSD. Plaintiff brings this action against Defendant King in his official capacity under state law to the extent immunity has been waived by the Sheriff's surety bond and by applicable insurance. He is also sued in his individual capacity under state law for actions that exceeded his lawful authority, that were malicious, corrupt, and intentional, thereby piercing any public officer immunity that he might claim. He is also sued individually under 42 U.S.C. § 1983 for actions taken under color of state law that violated Plaintiff's Fourteenth Amendment rights.

4. Defendant Liberty Mutual Insurance Company is sued as the Sheriff's surety under N.C.G.S. § 58-76-5. On information and belief, it has issued the statutorily mandated surety bond to cover any injury caused by the neglect or misconduct of the Sheriff or those he employs. Sheriff Page is obligated under state law to obtain and maintain said surety bond and by doing so, waives governmental immunity as to the claims in this matter, at least to the extent

2

Case 1:18-cv-00996-CCE-JEP   Document 1   Filed 11/30/18   Page 2 of 12

of the bond. On information and belief, the County of Rockingham has obtained insurance coverage that will indemnify Sheriff Page and Defendant King from the claims in this case and thereby waives governmental and public officer immunity that each might claim.

## JURISDICTION AND VENUE

5. Plaintiff files this action in federal court pursuant to 28 U.S.C. 1331, a Federal Question claim exists and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), and Plaintiff asks the Court to exercise supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. Plaintiff further asserts federal jurisdiction over this action as Plaintiff is making a claim against both Defendants individually under 42 U.S.C. § 1983.

6. Venue appears to be proper in this Court, the United States Middle District of North Carolina as all actions occurred in Rockingham County, which is within the Middle District of North Carolina and all Defendants except the surety are residents of Rockingham County.

## FACTS

7. On December 11, 2015 and December 15, 2015, Plaintiff was in custody in the Rockingham County Detention Center before he was released after posting a Twenty Five Million Dollar ($25,000,000.00) secured bond. He was originally placed in the custody of the Rockingham County Sheriff Sam Page on Thanksgiving Eve, November 25, 2015.

8. While in the custody of Sheriff Sam Page and his Captain Billy King, who was in charge of the Detention Center, Plaintiff suffered a serious personal injury on or about December 11, 2015 at approximately 2:00 a.m. that morning. The medical records from the Rockingham County Detention Center show that the Plaintiff had a blood pressure reading of 168/98, which is considered Stage 2 Hypertension that is indicative of a stroke.

9. Plaintiff had been in his jail cell alone on the night of December 10, 2015.

10. Upon information and belief, Plaintiff was awakened on the floor of his jail cell, around 2:00 a.m. the morning of December 11, 2015 by 7 correctional officers ("guards") at the Rockingham County Detention Center, who were standing over him in his cell, and who were pulling on Plaintiff and jerking his arm in a violent, forceful manner, which resulted in an extreme and painful injury to his shoulder that continues to be painful as of the date of the filing of this complaint, more than 2 and 3/4 years later.

11. Following the guards waking Plaintiff up in a rough and violent manner, they put the Plaintiff back into his bunk and left the cell. Many, many hours passed without any other guards or the jail nurse checking on Plaintiff.

12. Later that day, on December 11, 2015, Plaintiff was visited at the jail by two of his attorneys, Mr. Seth Woodall of Eden, N.C. and Mr. Bruce Lee of Greensboro, N.C.

13. Messrs. Woodall and Lee noticed blood was running out of Plaintiff's left ear, and that Plaintiff had noticeable facial drooping and slurred speech. They also noticed a large knot on his forehead, indicative of severe head trauma.

14. Mr. Woodall called a jail guard to come see Plaintiff, and informed the guard that it was his (Mr. Woodall's) belief that Plaintiff had suffered a stroke and needed to be taken to the nearest hospital emergency room for examination and treatment immediately. That request by Mr. Woodall was ignored by the jail staff and Plaintiff was not taken any place.

15. That next Monday or Tuesday, December 14th or 15th, Plaintiff was taken inside of the jail to see the jail nurse, employed upon information and belief by, Southern Health Partners, Inc., with whom the Rockingham County Sheriff's Department had contracted with for medical services regarding the detention center.

16. The jail nurse told Plaintiff to walk towards her, she then looked at Plaintiff's eyes, waved her finger in front of his eyes, than proceeded to give Plaintiff Tylenol pills for a headache and sent Plaintiff back to his cell, alone without any further medical attention or supervision. Meanwhile Page and King purposefully refused to render any assistance to the Plaintiff, which included intentionally not transporting him to the nearest hospital emergency room. However by that point in time, and the devastating damage of the stroke had already taken place. Time was of the essence on December 11, 2015, to take Plaintiff to the emergency room which was the same day Seth Woodall noticed the clear injuries to the Plaintiff and informed the jail staff.

17. A few days later, Plaintiff was taken inside the jail and submitted to an X-Ray machine, then was given more Tylenol pills. After 3 days, the jail nurse stopped giving Plaintiff any Tylenol pills and did not give Plaintiff any other medication. However by that point in time, and the devastating damage of the stroke had already taken place. Time was of the essence on December 11, 2015, to take Plaintiff to the emergency room which was the same day Seth Woodall noticed the clear injuries to the Plaintiff and informed the jail staff.

18. At that point, about 3 days after the Plaintiff had exhibited signs of a stroke to his attorneys, the nurse came to check the Plaintiff's blood pressure and oxygen levels. The nurse then told Plaintiff to go see a doctor when he was released from custody for high blood pressure. However by that point in time, and the devastating damage of the stroke had already taken place. Time was of the essence on December 11, 2015, to take Plaintiff to the emergency room which was the same day Seth Woodall noticed the clear injuries to the Plaintiff and informed the jail staff.

19. The Plaintiff was released from the custody of the Rockingham County Detention

Center soon thereafter on a Twenty Five Million Dollar ($25,000,000.00) secured bond, for which his family posted collateral valued at $25 million with a surety company, Bankers Insurance, Inc.

20. After his release, Plaintiff was seen by several medical providers, including but not limited to: The Mayo Clinic in Jacksonville, Florida, Apex Brain Centers in Asheville, North Carolina, Grimes Neurology & Concussion Center in Port Orange, Florida, Groat Eyecare Associates, P.A. in Greensboro, North Carolina and Dr. Andreas D. Runheim, M.D. with Salem Neurological Center, P.A. in Winston-Salem, North Carolina for continuous severe headaches, extreme shoulder pain, loss of hearing in his left ear, and loss of vision in his left eye.

21. Plaintiff was advised by the medical providers, with whom he was treated, that he had suffered a stroke on December 11, 2015, which caused him to fall hitting his head. That fall led to a concussion, along with the resulting large knot on his forehead, and the resulting continuous extremely painful headaches for the past 2 and ¾ years including the date of the filing of this complaint, and a Twenty Percent (20%) nerve loss in Plaintiff's legs and feet. Each and all of the foregoing injuries were proximately caused by the willful, intentional and negligent failure of the Rockingham County Sheriff's Office to have Plaintiff immediately seen and treated on December 11, 2015 at the nearest hospital emergency room. Rather the Defendants left the Plaintiff in his cell, without proper medical treatment which Plaintiff was entitled to as his rights as a citizen of the United States as is guaranteed to him by the United States Constitution. (The pictures of the Plaintiff taken when he was placed into custody at the Rockingham County Detention Center, do not show a knot on his forehead. However, subsequent pictures taken of the Plaintiff after December 11, 2015, show the large knot on his forehead.).

22. On information and belief, Defendant Page knows Plaintiff personally and the two

6

Case 1:18-cv-00996-CCE-JEP   Document 1   Filed 11/30/18   Page 6 of 12

men own property near each other in Rockingham County and have had a rocky and contentious history among them for many years. Plaintiff, had done business with Page in the past and the two men had been personal friends In fact, Plaintiff had openly supported Defendant Page both financially and politically since Defendant Page's first campaign for Sheriff of Rockingham County in 1998.

23. Defendant Page now harbors extreme ill will, hostile and very negative feelings about the Plaintiff for various reasons that will be proven through discovery. That ill will and hostility towards the Plaintiff by Defendant Page led Defendant Page to civilly conspire with Defendant Captain Billy King, to intentionally deny the Plaintiff access to medical care at the nearest hospital emergency room during the relevant time period after Plaintiff's attorneys visited him in the jail on December 11, 2015 and advised the jail staff of Plaintiff's condition.

24. Defendant Page and Defendant King, by and through their civil conspiracy to deprive Plaintiff of access to medical care at the nearest hospital emergency room, as is guaranteed to him as a citizen of the United States by the United States Constitution is a direct violation of his civil and constitutional rights and a violation of 42 U.S.C. § 1983.

25. The conduct of Defendants Page and King were intentional, hostile, malicious, laced with animus, and were calculated to lead to the long term medical damage of the Plaintiff, if not as the two Defendants Page and King had planned, the Plaintiff's eventual death, which has not occurred as of the date of the filing of this complaint.

26. Plaintiff suffered extreme pain and suffering and a substantial loss of income in the millions of dollars as a result of the negligence and intentional misconduct of Page and King. Plaintiff could have lost his life as a result of the intentional and malicious conduct.

27. The Plaintiff has suffered foreseeable, severe emotional distress due to his injuries

7

and the negligent and/or intentional misconduct of Page and King.

## First Cause of Action
### (Negligence)

28. All prior paragraphs are incorporated herein by reference.

29. The intentional actions of Defendants Page and King by not having the Plaintiff transported to the nearest hospital emergency room, after being advised to do so by Plaintiff's attorney Seth Woodall, and after the Plaintiff had a blood pressure reading of 168/98, which is considered Stage 2 Hypertension that is indicative of a stroke, were unlawful, exceeded the scope of their lawful authority, exhibited malice, violated Plaintiff's United States Constitutional rights and 42 U.S.C. § 1983, which ultimately led to the severe medical conditions and problems of Plaintiff. Such actions pierce any cloak of public officer immunity that Defendants Page and King might invoke.

30. The actions of Page and King in depriving Plaintiff of access to medical care at the nearest hospital emergency room, as is guaranteed to him as a citizen of the United States by the United States Constitution, exceeded the scope of their lawful authority under North Carolina law and showed actual malice toward Plaintiff, thus piercing any cloak of public officer immunity that Defendants Page and King might claim and violated 42 U.S.C. § 1983.

31. Furthermore, in civilly conspiring to deny Plaintiff access to medical care at the nearest hospital emergency room, as is guaranteed to him as a citizen of the United States by the United States Constitution, Page and King acted corruptly, further piercing any cloak of public officer immunity that they might claim. Said actions and/or inactions by the Defendants violate 42 U.S.C. § 1983.

32. Plaintiff Mickey Dale Snow seeks all damages to which he is entitled under North

Carolina law, including damages for the extreme pain and suffering as well as his resulting and substantial loss of income in the millions of dollars that Plaintiff experienced since the date of his injuries, which are the direct result of the negligence and/or intentional misconduct of Page and King,.

33. Defendants Page and King are sued both officially, to the extent of the waiver of governmental immunity for their negligence, and individually, for actions that were grossly negligent, exceeded the scope of their authority, were malicious and to the extent they filed false reports about these events, corrupt.

## Second Cause of Action
### (Negligent and/or Intentional Infliction of Severe Emotional and Mental Distress)

34. All prior paragraphs are incorporated by reference.

35. The actions of Page and King described herein constituted, at a minimum, negligence that proximately caused his extreme pain and suffering as well as his resulting and substantial loss of income in the millions of dollars that Plaintiff experienced since the date of his injuries It was reasonably foreseeable that Plaintiff Mickey Dale Snow would suffer severe emotional distress.

36. The Plaintiff did, in fact, suffer severe emotional distress from his injuries received as a result of the negligent and/or intentional conduct of Page and King.

37. The Plaintiff seeks and is entitled to compensatory damages for that severe emotional distress.

38. Page and King are sued both officially, to the extent of the waiver of governmental immunity, and individually, for actions that exceeded the scope of their authority and were malicious and, for Defendants Page and King, corrupt.

### Third Cause of Action
### (Fourteenth Amendment – 42 U.S.C. § 1983)

39. All prior paragraphs are incorporated by reference.

40. The Plaintiff brings this claim against Defendants Page and King individually, pursuant to 42 U.S.C. §1983, for violation of his rights protected by the substantive due process clause of the Fourteenth Amendment of the United States Constitution. All actions complained of were taken under color of law for purposes of 42 U.S.C. § 1983.

41. The Plaintiff alleges that the actions of Defendants Page and King in depriving Plaintiff of access to medical care at the nearest hospital emergency room, as is guaranteed to him as a citizen of the United States by the United States Constitution, was so shocking to the conscience that it violated the substantive due process clause of the Fourteenth Amendment.

42. The surviving Plaintiff seeks and is entitled to compensatory and punitive damages for this Fourteenth Amendment violation.

43. Plaintiff also seeks attorneys' fees as recoverable costs under 42 U.S.C. § 1988.

### Fourth Cause of Action
### (Action on the Bond)

44. All prior paragraphs are incorporated by reference.

45. The actions of Defendants Page and King constituted neglect and malfeasance in their employment with the Sheriff's Department and were taken under auspices of the office of the Sheriff. As a proximate result, Plaintiff suffered intense mental and physical injuries and pain.

46. Plaintiff brings this action for personal injuries on the Sheriff's bond pursuant to N.C.G.S. § 58-76-5. Under that statute, "every such officer and the sureties on the officer's

10

official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office."

47. The bond waives governmental immunity, and a party may sue under the bond repeatedly until the full penalty is recovered.

48. Plaintiff is entitled to recover on the bond all damages for injuries allowed by North Carolina law.

49. The Plaintiff is entitled to recover separately under the bond for Negligent Infliction of Emotional Distress.

## **Demand for Jury Trial**

50. The Plaintiff respectfully demands a jury trial on all issues of fact that may arise from the pleadings in this cause.

WHEREFORE, upon the trial of this matter, the Plaintiff prays the Court award relief as follows:

1. That Plaintiff Mickey Dale Snow have and recover against Defendants Page and King individually jointly and severally, all such monetary relief, injunctive relief, and equitable relief to which Plaintiff may be entitled under law, including but not limited to compensation for mental anguish, emotional distress, injury to reputation, injury to moral character, humiliation, embarrassment, loss of earnings capacity, loss of enjoyment of life, medical expenses, and other out-of-pocket expenses in an amount in excess of Ten Million Dollars ($10,000,000.00);

2. That Plaintiff Mickey Dale Snow have and recover judgment against Defendants Page and King jointly and severally compensatory damages in such amount as will fully

11

compensate him for his injuries and damages in an amount in excess of Ten Million Dollars ($10,000,000.00);

3. That the Plaintiff Mickey Dale Snow have and recover judgment against Defendants Page and King jointly and severally for punitive damages in such amount as will fully punish Defendants for their conduct in this matter and to deter future conduct of the same nature in an amount in excess of Thirty Million Dollars ($30,000,000.00);

4. That all damages be recovered on the bond should the Sheriff not pay them directly;

5. That the cost of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 & 1988, be taxed against the Defendants;

6. That the judgment against the Defendants bear interest from the time of the institution of this action as provided by law, including interest as provided under state law on the state law claims;

7. That the Court grant a trial by jury on all issues so triable; and

8. For such other and further relief the Court deems appropriate.

This the 30 day of November, 2018.

Mickey Dale Snow
*Pro Se*
698 S. Linden Drive
Suite 100F
Eden, North Carolina 27288
Telephone: (336) 613-5142
mickey@snowent.com